IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SUSAN BUFORD,

      Plaintiff,

vs.                          CASE NO. 1:16-cv-178-WTH-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for a period of disability and disability insurance benefits

pursuant to Title II of the Social Security Act ("the Act"). (ECF No. 1.) The

Commissioner has answered (ECF No. 7), and both parties have filed

briefs outlining their respective positions. (ECF Nos. 10, 11.) For the

reasons discussed below, the undersigned recommends that the

Commissioner's decision be reversed and remanded.

_____

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 23, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill
should be substituted for former Acting Commissioner of Social Security, Carolyn W.
Colvin, as Defendant in this matter. The Clerk is directed to correct the docket
accordingly.

# I.  PROCEDURAL HISTORY

Plaintiff filed her application on August 30, 2012, alleging a disability onset date of August 11, 2008. (R. 177–78, 199.) Plaintiff alleged that she stopped working due to pain in her neck, shoulders, arms, back, legs, and feet, among other things. (R. 202.) Her application was denied initially and upon reconsideration. (R. 112–16, 119–23.) Following a hearing held on September 4, 2014, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 38–50.) The Appeals Council denied Plaintiff's request for review. (R. 1–7.) On May 17, 2016, Plaintiff filed the instant appeal. (ECF No. 1.)

# II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971));

*accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[2] The impairment

must be severe, making Plaintiff unable to do his previous work, or any

other substantial gainful activity which exists in the national economy. 42

U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20

C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the

existence of a disability as defined by the Social Security Act. *Carnes v.*

*Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is

working at a substantial gainful activity, he is not disabled. 20 C.F.R. §

404.1520(b). Second, if a claimant does not have any impairment or

combination of impairments which significantly limit his physical or mental

ability to do basic work activities, then he does not have a severe

impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a

claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d).

Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a

---

[2] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

claimant's impairments (considering his residual functional capacity

("RFC"), age, education, and past work) prevent him from doing other work

that exists in the national economy, then he is disabled. 20 C.F.R. §

404.1520(f).

## III.  SUMMARY OF THE RECORD

Plaintiff's medical records cover the time period from 2008 to 2014

following a work-related injury on August 11, 2008, where Plaintiff fell and

injured the left side of her body. Plaintiff's records include those from

Kaiser Permanente, St. Mary Medical Center, and Puri Orthopaedic

Center. Because Plaintiff's arguments on appeal center on her continued

back, neck, and shoulder pain, the relevant portions of the medical record

are summarized below.

### A.    Medical Evidence

After Plaintiff fell at work on August 11, 2008, Plaintiff sought medical

attention at Kaiser Permanente, complaining of shoulder, arm, elbow, leg,

back, and neck pain on the left side of her body. During her initial visit on

August 14, 2008, Dr. Richard Yu examined Plaintiff, diagnosing her with

whiplash, a shoulder strain, a back strain, lumbosacral radiculitis, and a

concussion. (R. 423–426.)

Plaintiff had several MRIs and x-rays taken during her treatment with Dr. Yu in 2008. Of relevance, Plaintiff's lumbar spine MRI and x-rays revealed mild degeneration and narrowing of the disc space of L5-S1 and a mild bilateral facet hypertrophy at L4-5 and L5-S1, which was slightly worse on the left side, as well as minimal degenerative changes at L4-5. Plaintiff's shoulder MRI led to the diagnosis of a torn left rotator cuff. (R. 387, 391, 525.)

Plaintiff continued seeing Dr. Yu until January 2009. Throughout this period, she consistently complained of lower back pain, neck pain, shoulder pain, and accompanying issues. Physical examinations revealed tenderness in the neck, back, and shoulders. His diagnoses included back and shoulder strains, whiplash, lumbosacral radiculitis, and a concussion throughout the course of her treatment. (R. 423–426, 434–37, 443–46, 451–54, 459–63, 474–78, 494–97, 513–26, 531–35.)

Plaintiff underwent physical therapy for her injuries during this time period. Her physical therapist frequently noted limited range of motion and pain in Plaintiff's shoulder, back, and neck. In the end, Plaintiff did not respond well to physical therapy, so Dr. Yu referred her to an orthopedist. (R. 468–69, 482–83, 488–89, 502–03, 508–10, 534.)

On February 4, 2009, Plaintiff began seeing Dr. Rajiv Puri, an orthopedic surgeon, at the Puri Orthopedic Center for her work-related injuries and workers' compensation evaluations. During her initial visit, Dr. Puri diagnosed Plaintiff with displacement of the cervical and lumbar intervertebral disc without myelopathy and a sprain of the lateral collateral ligament of the knee. Throughout the course of her treatment, Dr. Puri consistently reported issues in Plaintiff's shoulder, neck, and back, including pain, tenderness, and limited range of motion. (R. 360–83.)

With regard to Plaintiff's shoulder,  Plaintiff's left shoulder MRI revealed moderate hypertrophic degenerative changes involving the acromioclavicular joint, a partial tear of the inferior fibers of the supraspinatus tendon, and mild tendinosis of the subscapularis. He diagnosed a torn left rotator cuff and impingement syndrome of the left shoulder. Dr. Puri thereafter recommended arthroscopic surgery for Plaintiff's left shoulder, which he performed on January 19, 2010. (R. 289–90, 379, 387.)

After her surgery, Plaintiff began physical therapy for her shoulder. During physical therapy, Plaintiff improved in the range of motion of her left shoulder but consistently reported pain in her back. At Plaintiff's final

physical therapy visit for her shoulder, the therapist found Plaintiff's range of motion in her shoulder was within normal limits. (R. 329–38, 346–49, 351, 353–58.)

Following shoulder surgery, Plaintiff continued to see Dr. Puri for her back. Plaintiff complained of severe lower back pain radiating to her left leg with numbness in her left foot. Plaintiff had x-rays and an MRI of her lumbar spine in April and May of 2010. Based on the diagnostic testing, Dr. Puri diagnosed Plaintiff with foraminal stenosis on Plaintiff's left side and degenerative disc disease at the L5-S1 region. Dr. Puri recommended a spinal decompression and fusion at L5-S1, which he performed on July 9, 2010.  (R. 285–88, 340–45, 352, 384.)

Plaintiff began physical therapy for her back on September 16, 2010, which continued until October 20, 2010. Plaintiff responded well to physical therapy overall, although she did at times complain of tightness and soreness. By her final visit, Plaintiff had a full range of motion within normal limits. (R. 303–306, 309, 311–18.)

Almost three years later, Plaintiff returned to Dr. Puri on June 12, 2013, again complaining of back pain with radiation to the left leg, shoulder pain, and pain in her neck radiating to her left upper extremity. Dr. Puri

reported that although Plaintiff did well initially following her surgery, the pain in her lower back returned and her symptoms were worsening. After a physical examination, Dr. Puri diagnosed Plaintiff with severe degenerative disc disease from C4 to C7, tendinitis in both shoulders, and failed back syndrome, as well as a possible screw impingement on the left side at S1. He referred Plaintiff for MRI examinations of her cervical and lumbar spine. (R. 404.)

Plaintiff's MRI of her lumbar spine revealed findings consistent with spinal fusion at L5-S1 as well as a trace disc bulge at L4-L5. An MRI of Plaintiff's cervical spine revealed disc height loss and small disc osteophyte complex at C4 to C7, as well as stenosis and slight indentations of the thecal sac. In light of Plaintiff's condition, Dr. Puri reported that Plaintiff was a candidate for anterior cervical discectomy and fusion surgery at C4-5, C5-6, and C6-7. (R. 403–09.)

Following Plaintiff's June 2013 return to Dr. Puri, Dr. Puri consistently diagnosed Plaintiff with failed back syndrome and a host of cervical spine issues, for which he concluded she would need surgery. (R. 402–04, 413–22, 667–71.)

## B. Opinion Evidence[3]

### 1. Dr. Silver - Workers' Compensation

Dr. Lee B. Silver examined Plaintiff on July 2, 2009 for a workers' compensation evaluation. Dr. Silver examined Plaintiff and reviewed her medical files. Dr. Silver's diagnostic impression included a left shoulder sprain with impingement, evidence of tendinosis or a partial tear of the supraspinatus tendon with moderate hypertrophic degenerative changes of the AC joint, a cervical musculoligamentous strain or sprain, and strains or sprains of the left elbow, left upper extremity, lumbosacral musculoligamentous, left hip, left lower extremity, and right shoulder. Based on her condition, Dr. Silver opined that Plaintiff was a candidate for left shoulder surgery. He also reported that Plaintiff could work but that she could not lift more than 10 pounds, repeatedly bend or stoop, make repetitive cervical spine movements, or work with her left upper extremity above shoulder level. (R. 270–80.)

### 2. Dr. Puri - Workers' Compensation

On October 27, 2010, Dr. Rajiv Puri completed a workers'

---

[3] As part of opinion evidence, Plaintiff also submitted an opinion from Dr. Ralph Steiger, who assessed Plaintiff's condition on March 9, 2015. That examination and resulting opinion, however, occurred after the ALJ's decision. (R. 11–24, 676–81.)

compensation assessment. Dr. Puri stated that Plaintiff was "released to modified duty" on October 28, 2010. He noted good range of motion in Plaintiff's left shoulder and neck, but Plaintiff's lumbosacral spine had limited range of motion with residual pain. Dr. Puri gave Plaintiff an impairment rating of 23%. (R. 294–96.)

With regard to Plaintiff's ability to work for workers' compensation purposes, Dr. Puri reported that Plaintiff could occasionally lift and/or carry 20 pounds, stand and/or walk less than eight hours in an eight-hour workday, sit a total of less than eight hours in an eight-hour workday, and push and/or pull up to 20 pounds. Dr. Puri also stated that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, crawl, and twist. He further clarified, however, that Plaintiff could not drive more than 45 minutes, sit for more than 45 minutes before needing a 10-minute break, lift more than 10 pounds, or stand more than 45 minutes. (R. 293, 299–300.)

### 3. Dr. Moazzaz

Dr. Payam Moazzaz performed a consultative orthopedic examination of Plaintiff on April 14, 2013.  Dr. Moazzaz noted problems with Plaintiff's walking and squatting. Plaintiff exhibited a decreased back

range of motion in her back, but the range of motion in her extremities was normal. Dr. Moazzaz's diagnosis was status post L5-S1 spinal fusion with residual symptoms. (R. 394–98.)

Dr. Moazzaz opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. Plaintiff could stand, walk, and sit for six hours in an eight-hour workday, and Plaintiff did not require an assistive ambulatory device. Plaintiff could also occasionally bend, kneel, stoop, crawl, and crouch. Plaintiff, however, could perform overhead activities and use her hands without limitation. (R. 394–98.)

### 4. State Agency Consultants

In April and September of 2013, state agency physicians made the following findings at the initial level and on reconsideration. Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk with normal breaks as well as sit for a total of approximately six hours in an eight-hour workday. She could also occasionally climb stairs, ramps, ladders, ropes, as well as balance, stoop, kneel, crouch, and crawl. At the initial level, but not on reconsideration, Plaintiff should avoid extreme cold, vibrations, and hazards. Both consultants found that Plaintiff was not disabled. (R. 97–110.)

### 5. Dr. Puri

On March 18, 2014, Dr. Puri completed a spinal impairment

questionnaire. On the questionnaire, Dr. Puri repeated Plaintiff's diagnosis

of a failed back syndrome of the lumbar spine and severe degenerative

disc disease of the cervical spine at C4 to C7. (R. 413–19.)

Dr. Puri found that Plaintiff had the following limitations. Plaintiff could

only perform a job in a seated position for two hours in an eight-hour

workday,[4] and she could only stand and/or walk for two hours in an eight-

hour workday. Plaintiff also required the usage of a single point cane while

standing or walking, and she could not walk a block at a reasonable pace

on uneven surfaces, use public transportation, or carry out routine activities

such as shopping and banking. Plaintiff could, however, climb a few stairs

at a reasonable pace with the use of a single hand rail and occasionally lift

and carry up to 5 pounds. Dr. Puri also stated that Plaintiff had significant

limitations in reaching, handling, and fingering. (R. 416.)

Dr. Puri further concluded that a competitive work environment would

---

[4] Dr. Puri also stated that it was medically necessary for Plaintiff to avoid continuous sitting and that Plaintiff needed to get up from a seated position every 30 minutes to move around for 10–15 minutes. Plaintiff also needed to elevate both legs at waist level while sitting. (R. 416.)

worsen Plaintiff's symptoms, leading to further pain in the neck and lower

back. Additionally, Plaintiff's experience of pain would frequently interfere

with her attention and concentration, and she would need to take multiple

unscheduled 30-minute breaks every two–three hours to rest. Dr. Puri

stated that Plaintiff would likely be absent more than three times a month.

In his best medical opinion, Plaintiff's limitations applied as far back as

August 12, 2008. (R. 418–19.)

## C.    Hearing Testimony

Plaintiff appeared before an ALJ for a hearing on September 4, 2014.

Plaintiff was 59 years old at the time of the hearing. Plaintiff testified she

had not worked nor applied for any work since her injury at Bank of

America on August 11, 2008, when she slipped on a rock and injured her

left side. Plaintiff stated that her workers' compensation case was closed,

and that she had settled for $20,000. (R. 55–60.)

Plaintiff next stated she had a plate and four screws inserted in her

back and that one of the screws was loose, causing constant stabbing pain

and requiring surgery. The pain radiated all the way down to her foot on

her left side and affected her ability to sit. Plaintiff said that she has to

frequently adjust positions every 15 to 20 minutes while sitting and that she

needed to stand for about 15 minutes before returning to a seated

position.[5] Plaintiff also said she frequently lays down for one to two hours

three times or as needed during the day to alleviate her pain. Additionally,

Plaintiff uses a cane on a daily basis. (R. 60–64, 67–68.)

With regard to neck pain, Plaintiff said that three discs in her neck

were rubbing together, constantly causing her dizzy spells, loss of focus,

headaches, and lightheadedness. Plaintiff stated she currently takes pain

medications but that they do not alleviate all of her pain. them. Plaintiff also

said she had limited range of motion in her neck and back. (R. 64–66.)

When discussing housework and other daily tasks, Plaintiff stated

that she could not do any major housework because of her back and neck,

although she could throw the laundry in the washing machine. Plaintiff said

she was not able to go grocery shop or put food away by herself and that

she had to lean on the shopping cart while shopping. (R. 65–67.)

The ALJ then questioned Plaintiff about her daily life. Plaintiff said

that during the day she does light housework, including dusting, washing

---

[5] Later in the hearing, Plaintiff said she can only sit for a period of 10 to 15 minutes before needing to stand up. After standing up, Plaintiff normally stands for around 10 minutes until the pain subsides before returning to a seated position. While seated, Plaintiff elevates her left leg using two pillows. (R. 70.)

dishes, folding clothes, and cooking. She also said that she sits around watching TV or reading. Plaintiff added that on Sundays and some Wednesday nights she attends church. (R. 73–75.)

When asked about medications, Plaintiff stated she took Norco only as needed, which was usually one every two days. Further, Plaintiff stated she took Ibuprofen as needed and one or two Tylenol per day. Plaintiff also occasionally took Lunesta, but she said she did not like the side effects, including dizziness and lightheadedness. (R. 76–80.)

The ALJ posed the following hypothetical to the VE: an individual of advanced age, with a high school education and past work as a credit analyst, a teller, and a collections clerk; limited to light work with occasional postural activities but with no ladders, ropes, or scaffolds; occasional bilateral above-shoulder work; and no unprotected heights or dangerous machinery. The VE responded that such an individual could perform all of the past work, even if they needed to alternate between sitting and standing, assuming they were able to continue performing work tasks. (85–86.)

The ALJ then adjusted the hypothetical. If standing and walking were reduced to two hours in an eight-hour workday combined with the need to

alternate between sitting and standing, the VE responded that the bank teller job would be eliminated but that work as a credit analyst or collections clerk could still be done. If the framework were changed to sedentary instead of light work, the VE opined that work as a collections worker or credit analyst could still be performed. The VE, however, said that if the individual were limited to unskilled work due to pain, the individual would be precluded from performing past work. (R. 85–87.)

The VE then addressed the same hypothetical the ALJ first posed with the added condition that the individual would need to use a single point cane at all times during her work. The VE stated that it would eliminate the bank teller job, but the credit analyst and collection clerk jobs could still be performed because they are sedentary. With the added limitation of needing unscheduled 30-minute breaks every two to three hours outside of the normal scheduled breaks and lunches, the VE stated that the individual could not perform any of Plaintiff's past work or any light job. (R. 88–89.)

A new hypothetical was posed to the VE that was the same as the original hypothetical with the added condition of being absent from work for three or more days each month. The VE said that such absenteeism would

not be within tolerance for Plaintiff's past relevant work if it persisted. (R. 89–90.)

## D. The ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 11, 2008, to her date last insured of December 31, 2013. The ALJ found Plaintiff had severe impairments of degenerative disc disease of the neck and back and a history of left shoulder impairments. Plaintiff, however, did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. 43.)

With respect to Plaintiff's residual functional capacity ("RFC"), the ALJ determined that Plaintiff had the RFC to perform light work with the exception that Plaintiff can perform occasional postural activities and above-the-shoulder work bilaterally. Plaintiff also cannot climb ladders, ropes, or scaffolds, and she cannot work in or around unprotected heights or dangerous machinery. (R. 44.)

The ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting

effects of her symptoms were not entirely credible. In support, the ALJ noted Plaintiff's ability to drive short distances, perform light housework, and attend church, which suggest that she is not as limited as she alleges. The ALJ also found that Plaintiff's limited frequency in taking pain medication reduces her credibility with regard to complaints of constant pain. (R. 44–45.)

The ALJ found that through the date last insured, Plaintiff was capable of performing her past relevant work as a credit analyst, teller, and collection clerk. Accordingly, the ALJ concluded that Plaintiff was not under a disability from August 11, 2008, the alleged onset date, through December 31, 2013, the date last insured. (R. 49–50.)

## IV.  DISCUSSION

Plaintiff raises three issues on appeal: (1) whether the ALJ failed to properly weigh the medical opinion evidence; (2) whether the ALJ failed to properly evaluate Plaintiff's credibility; and (3) whether the Appeals Council failed to properly consider new evidence. (ECF No. 10.)

As to the first issue, Plaintiff argues that the ALJ erred by assigning little weight to the opinion of Dr. Puri, Plaintiff's treating orthopedic surgeon since 2009. Plaintiff says that because Dr. Puri's opinions are based on

appropriate clinical and diagnostic testing and are uncontradicted by substantial evidence in the record, the ALJ should have given Dr. Puri's opinions controlling weight. (ECF No. 10 at 17–21.)

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)).

If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837, 841 (11th Cir. 1992). The Commissioner's reasons for refusing to credit a treating physician's opinion must be supported by substantial evidence. *MacGregor*, 786 F.2d at 1054.

Rather than affording Dr. Puri's opinion controlling weight, the ALJ determined that Dr. Puri's opinion was entitled to only little weight. The problem with this finding is that the  ALJ failed to articulate sufficient reasons based upon substantial evidence for giving Dr. Puri's opinion only little weight.

As one of the reasons for according Dr. Puri's opinion little weight the ALJ said that Dr. Puri's opinion exaggerated Plaintiff's limitations and was not based upon objective clinical or diagnostic findings. The ALJ's reasoning is directly contradicted by the record.

The record discloses that Dr. Puri based his opinions on diagnostic testing and physical examinations of Plaintiff. Specifically Dr. Puri stated in his report that he looked at MRIs and x-rays of Plaintiff's lumbar and

cervical spine. The record reflects that Plaintiff's  x-rays and MRIs evidenced that Plaintiff had degenerative disc disease of the cervical spine and failed back syndrome. In addition Dr. Puri referenced his examination, which revealed a limited range of motion, tenderness, muscle spasms, muscle weakness, sensory loss, and swelling in Plaintiff's lumbar and cervical spine, among other things. (R. 402–09, 413–14, 667–71.)

These findings are consistent with and confirmed by other physical examinations and diagnostic testing Dr. Puri and others performed throughout the relevant time period. Both before and after Dr. Puri performed a spinal decompression and spinal fusion at L5-S1 in June 2010, Plaintiff complained of lower back pain radiating down her leg. Physical examinations of Plaintiff throughout her entire treatment consistently disclose that Plaintiff had limited range of motion and/or tenderness.

Moreover, MRIs and x-rays of the spine throughout the period showed degenerative disc disease of the lumbar spine and later of the cervical spine, along with failed back syndrome. Despite her previous surgeries, Dr. Puri concluded that Plaintiff will require surgery on both the cervical and lumbar spine in the near future. (R. 285–88, 295–96, 302,

310, 322–28, 340–45, 370–74, 380–84, 391, 402–09, 425, 435–36, 444,

452, 460, 468–69, 475, 495, 516, 524, 532, 544, 669–71.)

Because Dr. Puri's opinion was based on objective clinical and

diagnostic findings from 2009 to 2013 and because his findings were

consistent with substantial evidence in the record, the ALJ erred by

according his opinion only little weight. *See* 20 C.F.R. § 416.927(d)(2); *see*

*also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (stating that

absent good cause, a treating physician's opinion should be accorded

substantial or considerable weight); *Lamb v. Bowen*, 847 F.2d 698, 703

(11th Cir. 1988) (same); SSR 96-2p ("If a treating source's medical opinion

is well-supported and not inconsistent with the other substantial evidence

in the case record, it must be given controlling weight . . . .").

Secondly, the ALJ gave Dr. Puri's opinion only little weight because

the ALJ stated that Dr. Puri's opinion contrasts with the evidence in the

record, including the largely negative findings in Plaintiff's most recent MRI

of her lumbar spine, that shows Plaintiff has improved since obtaining her

shoulder and back surgeries in 2010. The ALJ's reasoning is again

contradicted by the record.

The record evidence does not show that Plaintiff has improved since

her surgeries in 2010. While Plaintiff originally showed some improvement immediately following surgery through physical therapy, the medical evidence reveals that this improvement did not last. Plaintiff later experienced residual pain in her lower back as well as  cervical spine pain in 2013 and 2014. Dr. Puri diagnosed Plaintiff with failed back syndrome and severe degenerative disc disease from C4 to C7 following x-rays and MRIs. Based on these diagnostic findings, Dr. Puri concluded that further surgery was necessary on both her lumbar and cervical spine. (R. 402–09, 413–21, 667–71.)  Thus, rather than showing that Plaintiff improved, as the ALJ wrote, the evidence shows that since her surgeries (other than a short term improvement immediately after surgery) her condition did not improve.

Notably, despite saying that Plaintiff significantly improved, the ALJ failed to cite to any evidence in the record that actually shows Plaintiff significantly improved. While the ALJ said that Plaintiff's most recent lumbar MRI contains largely negative findings, this MRI fails to support the conclusion that Plaintiff showed much improvement. The 2013 MRI did reveal results consistent with Plaintiff's spinal fusion surgery but also revealed that Plaintiff had a trace disc bulge at L4-L5. This disc bulge did not appear on Plaintiff's 2010 MRI, thus suggesting a worsening of the

condition in Plaintiff's lumbar spine, rather than an improvement as the ALJ stated. (R. 406.)

The ALJ also gave little weight to Dr. Puri's opinion because the ALJ found that Dr. Puri's opinion sharply differed from Dr. Puri's October 2010 assessment in which Dr. Puri cleared Plaintiff to work.  This is a mischaracterization of Dr. Puri's 2010 opinion. Dr. Puri never cleared Plaintiff to work but only released Plaintiff to modified duty, noting that she was capable of working only if certain limitations could be accommodated. Regardless, the ALJ's statement about the differences in Dr. Puri's opinions is not a sufficient reason to discount Dr. Puri's later opinion because the opinions were not substantially different.

A careful comparison of Dr. Puri's opinion and his October 2010 assessment reveal that although there are differences, the overall findings in the opinions do not sharply differ. For example, there is no sharp contrast between sitting for 45 minutes followed by a 10 minute break (as stated in Dr. Puri's 2010 opinion) and sitting for 30 minutes followed by a 10–15 minute break (as Dr. Puri found in his later opinion).  Moreover, while there is a difference between an ability to lift 10 pounds and an ability to lift 5 pounds the difference is not substantial—and certainly not

substantial enough to discount a later opinion.  Additionally, both reports state that Plaintiff should only occasionally climb stairs and that she should limit her stress. While it is true that each report also contains limitations that the other does not, these differences are not so substantial as to conflict with each other.  (R. 293–300, 416–19.)

Additionally, when evaluating the differences in the two opinions an evaluation must take into account that Dr. Puri's 2010 assessment was performed in the context of a workers' compensation evaluation. The ALJ on the one hand apparently recognized this fact when he noted that conclusions made in the context of workers' compensation have little probative value in determining whether an individual is disabled because they address only whether an individual can return to the job performed at the time of the injury. That view is correct. The ALJ then ignored this view and relied upon the 2010 opinion to point to differences with the later opinion in an attempt to discredit Dr. Puri's opinion. Simply put, if the focus of the 2010 opinion was entitled to little probative value in assessing disability the ALJ should not have relied upon the opinion to discredit the later opinion because there are differences.

Lastly, the ALJ discredited Dr. Puri's treating physician opinion on the

speculative and unsupported assumption that Dr. Puri may have been
sympathetic to Plaintiff's condition. Despite Dr. Puri's statements regarding
Plaintiff's possible receipt of disability benefits in the future, the ALJ's
statement is mere speculation and does not establish sufficient legal
justification to accord little weight to Dr. Puri's medical opinions. *See
Shuren v. Comm'r of Soc. Sec.*, No. 6:11-cv-1191-Orl-GJK, 2012 WL
4194665, at *10 (M.D. Fla. Sept. 19, 2012) ("[T]he ALJ's musings about an
inherent possibility for sympathy bias in the doctor-patient relationship . . .
is sheer speculation and is contrary to well-established law requiring that a
treating physician's opinion be given substantial weight absent clearly
articulated good cause for a contrary finding."); *Anderson-Wilson v. Astrue*,
No. 1:11cv57-WCS, 2012 WL 161763, at *13 (N.D. Fla. Jan. 18, 2012)
("That a treating physician . . . has sympathy for the patient and wishes to
alleviate suffering does not detract from the physician's credibility.").

As a result of the ALJ's error in failing to accord Dr. Puri's opinion
controlling weight, the ALJ's treatment of the other opinion evidence in the
record is called into question. Notably, "[t]he opinions of treating physicians
generally are given more weight than the opinions of non-treating
physicians." *Fleming v. Comm'r*, *Soc. Sec. Admin.*, 550 F. App'x 738, 739
(11th Cir. 2013) (citing *Lewis v Callahan*, 125 F.3d 1436, 1440 (11th Cir.

1997)).

Because the ALJ failed to articulate sufficient reasons based upon substantial evidence for not according Dr. Puri's opinion controlling weight, the ALJ may have erred in finding that other opinions in the record—those of Dr. Moazzaz and the state agency physicians—were entitled to greater weight than Dr. Puri's opinion. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (one-time examiners' opinions are "not entitled to deference"); *Fleming*, 550 F. App'x at 739 ("The opinions of non-examining, reviewing physicians, when contrary to the opinions of the examining physicians, are entitled to little weight.").

In sum, the ALJ erred in failing to properly evaluate and assign appropriate weight to the opinions of Plaintiff's treating physician.  As a result of this error and the fact that the ALJ instead determined that Plaintiff is far less limited than Dr. Puri opined, the ALJ should be required to reassess Plaintiff's RFC, properly taking into account the opinion of Plaintiff's treating physician, and then assess at step four of the sequential evaluation whether Plaintiff is capable of performing her past relevant work. Accordingly, the decision of the ALJ is reversed and remanded for further

proceedings consistent with this report and recommendation.[6]

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this Report and Recommendation.

**IN CHAMBERS** this 4th day of August  2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.

---

[6] Because the ALJ on remand must reevaluate the opinion evidence and Plaintiff's RFC, it is unnecessary to address Plaintiff's remaining arguments in this appeal challenging the ALJ's credibility assessment and the Appeals Council's consideration of new evidence.